[No. 14318.　Department Two.　January 16, 1918.]

ROY C. WELLS, *Appellant*, v. REGINA WELLS, *Respondent*.[1]

DIVORCE—SUPPORT OF CHILDREN—CONTEMPT—ABILITY—EVIDENCE—SUFFICIENCY. A judgment of contempt in failing to pay alimony for the support of children is unwarranted by the fact that the delinquent father might abandon his employment of crab fishing, which had become unprofitable, and learn a new trade, where the preponderance of the evidence showed his inability to make the payments and he purged himself of any wilful and ·contumacious intention to avoid payment of the money, his inability being real, but apparently only temporary.

Appeal from an order of the superior court for Whatcom county, Hardin, J., entered December 18, 1916, adjudging plaintiff guilty of contempt in violating an order for the payment of alimony. Reversed.

*John J. Pinckney*, for appellant.

*A. J. Craven*, for respondent.

HOLCOMB, J.—On April 23, 1914, a decree of divorce was entered in the superior court of Whatcom county, upon the complaint of appellant, dissolving the marriage theretofore existing between the parties and awarding the custody of the two children, aged, respectively, seven years and five years, to the respondent, the mother, on account of their tender ages. The court awarded to appellant a tract of unimproved, nonproducing land, containing about eighty acres, near Blaine, and awarded to respondent two lots with a dwelling thereon in Blaine, and required appellant to pay the taxes and assessments upon the lots, and further provided that appellant should pay the sum of $15 per month for the support of the minor children, beginning the first Saturday in May, 1914.

Appellant paid the taxes and assessments upon the property awarded to respondent as required by the decree, and

[1]Reported in 169 Pac. 970.

also made the payments of $15 per month up to and including the payment of September, 1915, but defaulted in the payments for October, November, and December, 1915. On December 7, 1915, respondent secured an order requiring appellant to appear, on January 11, 1916, and show cause why he should not be punished for contempt by reason of his failure to make such overdue payments. On January 11, 1916, appellant appeared personally without counsel. After hearing the evidence, the court continued the matter until February 7, 1916, and ordered appellant to pay the sum of $25 to respondent on or before February 7; and ordered, further, that he pay to respondent, on the first Saturday of each month, the sum of five dollars in addition to the regular installments until the overdue installments were paid, and that he pay a doctor's bill of $28.50, incurred for medical treatment of the minor children, and the cost of the hearing, taxed at $18.80, on or before the first Saturday in March, 1916. The matter was then continued from time to time upon motion, and appellant, at various times, introduced numerous affidavits to substantiate his contention that he was unable to make the payments ordered by the court. On December 18, 1916, the court entered the order adjudging appellant guilty of contempt and committing him to jail in default of the payments in arrears. At that time he was in arrears $125, having paid $90 to apply on the overdue installments subsequent to the date of the original hearing.

The affidavit of the respondent initiating the contempt proceeding alleged, among other things, that appellant is a strong, able-bodied man and able to earn good wages in various employments. The affidavits presented by appellant at the several hearings, among them many of entirely disinterested persons, establish the facts, that appellant is a crab fisherman and unskilled at any other labor or employment; that he is industrious, sober and extremely economical, honest, and generally pays all of his debts and obligations; that, during the preceding two years, crab fishing had been exceed-

ingly unprofitable, and crab fishermen had been unable to make much, if anything, more than their expenses; that, during such time, appellant had been unable to clothe himself properly and had not proper shoes or other clothing; that, notwithstanding this, he had made some small payments of the amounts ordered to be paid for his children. It was shown that crab fishing had been rendered unprofitable during the preceding two years by reason of the occurrence of unusual winds which prevented him and other crab fishermen from fishing their traps as often as usual, and thus prevented obtaining the usual catch; that, during the closed season, appellant endeavored to secure other work than crab fishing and was promised work in a cannery at Blaine, but failed to secure the work on account of the light run of salmon during the salmon fishing season; that he obtained some work in British Columbia, but was compelled to relinquish it on account of the sickness and death of his father, and upon his return to the place of work, was unable to secure further work; and, in general, it seems to be shown beyond any doubt that he made every effort to secure employment and to earn an income during the crab fishing season to the best of his ability.

The only circumstance that appears to indicate a contumacious disposition concerning the payment of the sums ordered for his children is that he sold to his brother for crab fishing, gear valued at $400, the eighty acres of land awarded to him as separate property, which a witness valued at $1,600, subject to some delinquent taxes the amount of which was not shown. This land, however, was unimproved and produced no income, and his disposition thereof as shown may have been as much in good faith with the intention of procuring sufficient gear to increase his income from crab fishing as in bad faith with the intention to defeat his obligations toward his minor children.

The trial court indicated that, being convinced that appellant was a strong, able-bodied man and able to work (which is not denied), and that work is in demand and mills are run-

ning, he should abandon crab fishing and obtain other work and provide for his children. There is no doubt, and appellant conceded, that he was under a strong moral as well as legal obligation to provide for his children. But where the inability to pay is *bona fide*, a court cannot compel the delinquent father to learn a new trade or acquire a profession or find employment and thus derive the means wherewith to pay the alimony allotted. 1 R. C. L. 962. The same situation might well have existed in the following cases decided by this court: *Holcomb v. Holcomb*, 53 Wash. 611, 102 Pac. 653; *Boyle v. Boyle*, 74 Wash. 529, 133 Pac. 1009; *Crombie v. Crombie*, 88 Wash. 520, 153 Pac. 306. In none of those cases did the court require the defaulting husband or father to abandon his regular, and search for a new, occupation. The condition shown by appellant in this case is a more precarious one than that shown in either the *Holcomb* or the *Crombie* case.

We are of the opinion that the appellant showed, by a great preponderance of facts, his inability to make the payments during the time he was in default and to comply with the order at the time it was made, and purged himself of any wilful and contumacious intention to avoid the payment of the money. His inability is real, but apparently temporary. His obligations under the decree will continue and accumulate until his actual ability to pay recurs. It is only where the inability is wilfully brought about by himself, with intent to avoid payment, that the refusal to pay becomes contumacious, and such inability would not purge him of contempt. But imprisonment certainly should not be ordered when it appears that the default is the result of honest inability to pay on account of business misfortunes, lack of earning ability, or other fortuitous circumstances which are not the fault of the party. That is the spirit of our decided cases.

Order reversed.

Ellis, C. J., Mount, Morris, and Chadwick, JJ., concur.